<div align="center">

**UNITED STATES DISTIRCT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (CLEVELAND)**

</div>

| | | |
|---|---|---|
| **THOMAS W. JOHNSON** | : | **Case No. 1:15-cv-01064-DAP** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **THE SHERWIN-WILLIAMS** | : | |
| **COMPANY** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF'S MEMEORANDUM IN OPPOSITION TO MOTION TO DISMISS**

## I.     INTRODUCTION

Defendant Sherwin-Williams does not dispute that its Installer/Subcontractor Authorization and Release contains a release of claims, which courts have overwhelmingly held constitutes a violation of the Fair Credit Report Act, 15 U.S.C. § 1681a et seq.  Nor does Sherwin-Williams dispute that on or around February 16, 2015, Defendant submitted to Plaintiff a "Notice of Adverse Action Based Upon Background Investigation," thereby making an adverse employment decision before providing Plaintiff Thomas Johnson ("Johnson") a copy of the report and a summary of rights pursuant to §1681b(b)(3)(A).  Rather, Sherwin-Williams claims that it was not subject to the "stand-alone disclosure" and "pre-adverse action" provisions of the FCRA since the report was not being obtained for "employment purposes."  At its core, Defendant claims that because Johnson's relationship with Sherwin-Williams was intended to be that of an independent contractor and not that of an employee, these provisions do not apply.

 Sherwin-Williams' arguments are belied by the caselaw, which holds that employers, such as Sherwin Williams, are subject to the "stand-alone disclosure" and "pre-adverse action" provisions of the FCRA irrespective of whether the relationship is that of an employee or

<div align="center">

1

</div>

independent contractor. Alternatively, even if the "stand-alone disclosure" and "pre-adverse action" provisions of the FCRA do not apply to contractors, this Court must engage in a factual inquiry of whether or not Johnson was an employee rather than an independent contractor. Because Johnson has alleged facts to support his status as an employee, Sherwin-Williams' motion must be denied.

Sherwin-Williams' alternative arguments are equally unavailing.  Johnson is not required to demonstrate actual harm, for Johnson had pled that Sherwin-Williams' actions constitute willful noncompliance with the FCRA.  Likewise, Johnson did not release Sherwin-Williams for any conduct relating to the background check, for that release is void as against public policy. The very release that subjects Sherwin-Williams to FCRA liability can somehow absolve it of that liability.  Sherwin-Williams' argument is simply untenable.

As Johnson had stated claims for FCRA violations, Sherwin-Williams' motion to dismiss must be summarily overruled.

## II.      LAW AND ARGUMENT

### A.      Statutory Background

The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guiniond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). These "consumer oriented objectives support a liberal construction of the FCRA" and "any interpretation of this remedial statute must reflect those [consumer oriented] objectives." *Id*. at 1333; *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998) ("FCRA is to be liberally construed in favor of the consumer"); *Cortez v. TransUnion*, LLC, 617 F.3d 688, 706 (3d Cir. 2010); *Hoke v. Retail*

*Credit Corp.*, 521 F.2d 1079, 1082 n.7 (4th Cir. 1975); *cf Vincent v. The Money Store*, 736 F.3d

88, 98 (2d Cir. 2013) (holding that Fair Debt Collection Practices Act "must be construed in a

liberal fashion if the underlying Congressional purpose is to be effectuated" (internal citation

omitted)).

Section 1681a(d)(1) defines a "consumer report," and sets forth the limited purposes for

which a consumer report may be procured:

> The term "consumer report" means any written, oral, or other
> communication of any information by a consumer reporting
> agency bearing on a consumer's credit worthiness, credit standing,
> credit capacity, character, general reputation, personal
> characteristics, or mode of living which is used or expected to be
> used or collected in whole or in part for the purpose of serving as a
> factor in establishing the consumer's eligibility for—
>> (A) credit or insurance to be used primarily for personal, family, or household
>> purposes;
>> (B) employment purposes; or
>> (C) any other purpose authorized under section 1681b of this title.

The "stand-alone disclosure" and "pre-adverse action" provisions of the FCRA are found at 15

U.S.C. § 1681b.  Section 1681b(b)(2)(A) reads as follows:

> (2) Disclosure to consumer.
>> (A) In general. Except as provided in subparagraph
>> (B), a person may not procure a consumer report, or
>> cause a consumer report to be procured, for
>> employment purposes with respect to any consumer,
>> unless—
>>> (i) a clear and conspicuous disclosure has been
>>> made in writing to the consumer at any time
>>> before the report is procured or caused to be
>>> procured, in a document that consists solely of
>>> the disclosure, that a consumer report may be
>>> obtained for employment purposes; and
>>> (ii) the consumer has authorized in writing
>>> (which authorization may be made on the
>>> document referred to in clause (i)) the
>>> procurement of the report by that person

Section 1681b(b)(3)(A) reads as follows:

> (3) Conditions for use in adverse actions.
>> (A) In general. Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>>> (i) a copy of the report; and
>>> (ii) a description in writing of the rights of the consumer under this title, as prescribed by the Bureau under section 609(c)(3)

The FCRA defines "employment purposes" as, "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h).

### B.      The FCRA's "Stand-Alone Disclosure" and "Pre-Adverse Action" Provisions Apply to Johnson

Sherwin-Williams claims that the "stand-alone disclosure" provisions and the "pre-adverse action" provisions of the FCRA do not apply to Johnson since he was an independent contractor, and as such, the report was not obtained for "employment purposes." Rather, it asserts that its background check was conducted for a "legitimate business need," which it claims is a permitted purpose under Section 1691b(a)(F), and exempt from the "stand-alone disclosure provisions" and the "pre-adverse action" provisions.

Sherwin-William's arguments are unpersuasive.  First, courts have held that a report procured "for employment purposes" under the FCRA does not necessarily have to be procured by the employer of the report's subject.  Moreover, Sherwin-Williams' "legitimate business need" argument uses flawed logic, and is simply a smokescreen for the true reason Sherwin-Williams procures background checks on its installers – to ensure based upon the background report that that they did not work on Sherwin-Williams' projects.  Finally, even if subcontractors

4

are not subject to the relevant portions of the FCRA, this Court must necessarily evaluate whether Johnson and similarly situated installers are employees cloaked as independent contractors pursuant to the Supreme Court's holding in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992).

**1.    Sherwin-Williams Need Not Be Johnson's Employer In Order to Have Used the Background Check for "Employment Purposes"**

The FCRA states the term "consumer report" encompasses "information … used … for the purpose of serving as a factor in establishing the consumer's eligibility for … employment purposes." 15 U.S.C § 168la(d)(l). The FCRA defines the term "employment purposes" as "the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681(h). Read together, in pertinent part, the two provisions indicate that a report is a consumer report if it is used for the purpose of determining a consumer's eligibility for employment, promotion, reassignment or retention.

The Southern District of New York recently considered this issue, and held that reports that impact the consumer's employment are consumer reports, even if the entity that procured the report is not the consumer's employer. In *Ernst v. Dish Network LLC*, 49 F.Supp.3d 377, 378 (S.D.N.Y. 2014), the plaintiff was a satellite dish installation technician employed by non-party Superior Satellite, Inc. (" Superior"). Defendant Dish Network L.L.C. provided satellite television and installation services. Dish implemented a program whereby all third-party contractors such as Superior obtain a background check on all installers who worked on Dish projects. *Id*. Dish was then provided a summary report of the findings. *Id*. at 379.

The Southern District of New York ultimately held that the summary report was a consumer report under the FCRA, and that it was used for "employment purposes." *Id.* at 380. In so holding, the court noted that the information in the summary report was collected, expected to

5

be used and actually used to evaluate the plaintiff for reassignment or retention. *Id*. at 383.

Superior was required to obtain the information as part of Dish's consumer program, and Dish

required a Summary Report to verify compliance with the program. *Id*. Superior and Dish would

have allowed Plaintiff to work in Dish customer homes if Sterling's report on Plaintiff had

labeled him " low risk." *Id*. The report labeled him " high risk," so Plaintiff was prevented from

working in Dish homes. Because Plaintiff was not allowed to work in Dish homes, he ultimately

was offered the option of being reassigned to sales or leaving his job. *Id*. Thus, both Superior and

Dish expected the Summary Report to be used for employment purposes, and it actually was

used for employment purposes. *Id.*

Moreover, the court distinguished the *Lamson* decision, which Sherwin-Williams cites in

its brief, noting:

> Dish cites one district court case holding that the FCRA applies only
> to an employee of the employer that received the report. See *Lamson
> v. EMS Energy Mktg. Serv., Inc.*, 868 F.Supp.2d 804, 816 (E.D. Wis.
> 2012) (holding that an independent contractor could not sue under the
> FCRA). The underlying logic of *Lamson*, however, is at odds with the
> disjunctive nature of the statute and would lead to the same illogical
> results that the Fifth Circuit noted in *St. Paul Guardian Insurance Co.*
> 884 F.2d at 885. As the Fourth Circuit has held, the definition of
> "employment purpose" does not restrict the FCRA to an employee of
> the employer that received the report. *See Hoke*, 521 F.2d at 1081-82
> (finding employment purpose where credit report was obtained as
> part of doctor's licensing procedure) (cited by *Advanced Conservation
> Sys., Inc. v. Long Island Lighting Co.*, 113 F.3d 1229, at *2  (2d Cir.
> 1997) (unpublished table opinion) (finding employment purpose
> where public utility obtained and relied on credit report of plaintiff to
> determine that his company should not be included in a directory of
> reliable service providers whom utility customers might hire)).

*Id*. at 385.

The two Circuit Courts of Appeal that have considered the issue, as well as the FTC, have

similarly found that reports that impact the consumer's employment are consumer reports, even if

the entity that procured the report is not the consumer's employer. *See Advanced Conservation Sys. v. Long Island Lighting Co.*, 113 F.3d 1229 (2nd Cir., May 23, 1997); *Hoke v. Retail Credit Corp.*, 521 F.2d 1079 (4th Cir. 1975). In *Hoke*, the Fourth Circuit held that the FCRA applied to a report obtained by a medical licensing board for the purpose of evaluating a physician for licensure, because that report was obtained for employment purposes. *Hoke*, 521 F.2d at 1081-82. The court found that the report was obtained for "employment purposes" even though the board was not the employer of the physician. Because having a license would be determinative of the doctor's ability to obtain employment, the court had "no hesitancy in concluding that the information was furnished for "employment purposes." *Id*. at 1082.

In so holding, the court rejected the application of strict common-law definition of employment in the FCRA context:

> If we were to apply the common-law concept of employee, we would undoubtedly conclude that a physician who practiced his profession as a sole practitioner or as a member of a medical partnership was an independent contractor, and not an employee, because of the absence of control over the manner in which he afforded expert medical services. But in construing FCRA, we are cognizant of its broad remedial purposes, 15 US.C. § 1681, and we are not constrained to limit its application by the common law concept of master and servant.

*Id.* at 1082 n. 7.

In *Advanced Conservation Sys.*, the Second Circuit concluded that a consumer report can be used for employment purposes even when there is no employment relationship between the consumer and the procurer of the consumer report. 113 F.3d 1229. In that case, the plaintiff was the president and sole shareholder of a heating installation company, and sought to include his company in two services directories published by the defendant. *Id.* The defendant procured a credit report on the plaintiff, and upon finding that the plaintiff's company had numerous

outstanding judgments against it, denied the plaintiff's request to be included in the directories. *Id*. The plaintiff sued the defendant arguing that the defendant had procured his report for an impermissible purpose. *Id*. Even though plaintiff was not employed by the defendant, nor sought to be employed by the defendant, the court found that report was procured for employment purposes because the defendant's customers "used the directories for employment purposes - to hire the listed business." *Id*.

Furthermore, the FTC has consistently opined that independent contractors are subject to the employment-purposes provision of the FCRA. See Allison FTC Staff Opinion Letter, February 23, 1998 ("we conclude that a trucking operation that uses consumer reports to evaluate whether to engage individuals as [independent contractor] drivers must comply with the applicable provisions of the FCRA pertaining to consumer reports obtained for employment purposes"); Solomon FTC Staff Opinion Letter Oct. 27, 1998.  These opinions are consistent with overarching logic of the holdings in *Hoke* and *Advanced Conservation Sys.* – a report can be obtained for employment purposes even by an entity which is not an employer or prospective employer.

This logic is consistent with the Supreme Court's recent decision in *Lawson v. FMR LLC*, 12-3, 2014 WL 813701 (U.S. Mar. 4, 2014). In Lawson, the Supreme Court held that the whistleblower protection available under the Sarbanes-Oxley Act was available not just to employees of public companies, but to their contractors and subcontractors as well. Reading the statutory text at issue in that case, which simply barred retaliation against "an employee," the Court looked at the purpose of the law and found that it applied not only to employees of public companies which are the general subject of the law, but also to the employees of their contractors and subcontractors.  *Id*.  Just as "an employee" who receives whistleblower protection pursuant

8

to *Lawson* does not have to be an employee of the public company against whom he or she blows the whistle, a report procured "for employment purposes" under the FCRA does not necessarily have to be procured by the employer of the report's subject.

The flaw in Sherwin-Williams' argument is best demonstrated by its own documents. In Paragraph 12 of its Sub-Contractor's Agreement, Sherwin-Williams may perform background checks on the contractor. See Sub-Contractor's Agreement, attached to Motion to Dismiss as Exhibit A. In addition, Sherwin-Williams requires, much like *Dish*, that its contractors perform routine background checks on its employees, and to take "appropriate safety, precautionary, and disciplinary measures based upon the information disclosed thereby." At Sherwin-Williams' request, those background checks must be provided by Sherwin-Williams.

Pursuant to *Ernst*, any background checks performed by the contractor and provided to Sherwin-Williams are performed for "employment purposes." Yet, under Sherwin-Williams' strained theory, if those background checks are performed by Sherwin-Williams rather than the contractor, they fall outside the "employment purposes" provision.  This makes no sense. Clearly, Sherwin-Williams' purpose in procuring a background check on Johnson was to determine whether or not he would or would not work on Sherwin-Williams jobs.  This is true irrespective of whether or not he was an employee, and irrespective of which entity procured the background report.

Here, the plain language of the FCRA, case precedent and FTC guidance all hold that a report procured "for employment purposes" under the FCRA does not necessarily have to be procured by the employer of the report's subject.  Stated another way, despite his purported status as contractor, Sherwin-Williams' procurement of a report in order to make a determination

9

whether or not to hire Johnson was made for "employment purposes." Sherwin-Williams'

motion must be denied.

### 2. Sherwin-Williams' Claim That It Procured Background Checks for "Business Purposes" Is Purely Semantic

Throughout its Brief, Sherwin-Williams continually states that it did not use the

background checks for "employment purposes", but instead for a "legitimate business need for

the information in connection with a business transaction that is initiated by a consumer."

Specifically, Sherwin-Williams claims that its legitimate business need is the "safety and

security of [work] premises" as well as its "reputation" and "quality of services rendered." See

Complaint, Exhibit 1. Sherwin-Williams' creatively myopic attempt to re-characterize its purpose

in procuring the information ignores the intermediate steps that were undisputedly necessary in

order to accomplish Sherwin-Williams' safety and reputational goals – namely, stopping Johnson

from working on Sherwin-Williams' projects.

On Sherwin-Williams' flawed view of the relevant "purpose" for using a report, virtually

all users of reports for employment purposes could re-characterize their purpose as ensuring

"safety or security."  Indeed, any number of goals that are not specifically related to employment

could be substituted, thereby skirting the requirements of the "stand-alone disclosure" and "pre-

adverse action" provisions of the FCRA. In this circumstance, the flawed logic is the same -- the

user's ultimate business goal simply cannot be substituted for the immediate purpose for which

the report is actually used.  In this case, the purpose for which the report is used is clear – to

prevent certain individuals from working, plain and simple, this constituting an "employment

purpose."

### 3.    A Jury Could Conclude That Johnson Would Have Been a Sherwin-Williams Employee

Even if the Court, counter to Supreme Court case law, case precedent, and the text of the FCRA, were to hold that Johnson is required to demonstrate that he was a Sherwin-Williams employee in order to show that Sherwin-Williams used the report "for employment purposes," Sherwin-Williams' motion to dismiss should necessarily be denied since Johnson has alleged facts sufficient to show that he was, or could have been, an employee of Sherwin-Williams.

Under the common law test articulated in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992), the central question to determining employee status is the putative employer's "right to control the manner and means by which the product is accomplished." 503 U.S. at 323-324. Factors relevant to the inquiry include: (1) whether the putative employer is in business; (2) whether the work is part of the regular business of the putative employer; (3) the duration of the relationship between the parties; (4) whether the putative employer has the right to assign additional projects to the putative employee; (5) the extent of the putative employee's discretion over when and how long to work; (6) the skill required; (7) the location of the work; (8) the method of payment; (9) the source of the instrumentalities and tools; (10) the putative employee's role in hiring and paying assistants; (11) the provision of employee benefits; and (12) the tax treatment of the putative employee. *Id*. Critically, no one factor is determinative; rather, the totality of the circumstances control, with the weight to be afforded each factor, if any, dependent on the context of the lawsuit and type of work at issue. *See id*.

Similarly, determining joint employer status (where more than one entity functions as the employer) requires analysis of the totality of the circumstances. Specifically, in employment cases, the joint employer inquiry examines the circumstances through analysis of factors similar to those in *Darden*. *See e.g., Williams v. City of Columbus,* 892 F.Supp.2d 918, 929 (S.D. Ohio

2012) (Title VII case stating that " [o]ne entity is the joint employer of another entity's formal employees, and thus liable under federal and state anti-discrimination laws, if the two 'share or co-determine those matters governing essential terms and conditions of employment,'" and listing factors such as "the ability to hire, fire, and discipline, affect compensation and benefits, direct and supervise performance, supervision of the employees' day-to-day activities, promulgation of work rules, conditions of employment, and work assignments, and issuance of operating instructions (internal quotations, citations, and brackets omitted)).

In fact, the *Lamson* case, which Sherwin-Williams cites in its brief, supports the proposition that its motion to dismiss must be denied at this preliminary stage of the litigation. In *Lamson*, the plaintiff filed for an independent contractor sales position with the defendant company, and ultimately sued for violations of the FCRA. 868 F. Supp2d 806-07. The court, on summary judgment, reviewed whether the nature and degree of control exercised by the defendant company was sufficient to render him an employee of the defendant company, even thought the agreement stated he was an independent contractor. Id. at 813-16. Thereafter, the court engaged in a factual determination to ascertain whether the plaintiff was or was not an employee. *Id*.

Indeed, the Complaint alleges facts, and Sherwin-Williams' documents demonstrate, that Johnson's relationship could be construed as that of an employee.  The Complaint assets that "Sherwin-Williams routinely violated the FCRA's core protections by procuring background checks on employees and job applicants without providing a "stand alone" disclosure that a background check would be procured." Complaint, ¶1.  Likewise, Johnson alleges that "in late 2014, Plaintiff applied for a job with Defendant as a flooring installer/subcontractor," and that neither the background check authorization screen nor "any other document involved in

12

Defendant's job application complied with the FCRA requirement that an entity procuring a consumer report for employment purposes disclose that fact in a document that consists solely of the disclosure." *Id*. at ¶21, 22. Sherwin-Williams' Notice of Adverse Action states "[t]he information we received from the background investigation report in the following category disqualifies you from employment/promotions/SW subtractor/installer." Complaint, Exhibit 2.

Thus, even if this Court were to conclude that the "stand-alone disclosure" and "pre-adverse action" provisions of the FCRA do not apply to Johnson because independent contractors are not covered by this provision (which flies in the face of the *Ernst v. Dish Network* and *Hoke v. Retail Credit Corporation* decisions), this Court must nevertheless undertake a factual analysis, and allow discovery on, whether or not Johnson was actually an employee rather than an independent contractor for purposes of the FCRA.  Sherwin-Williams' motion to dismiss must be denied as requiring premature factual determinations.

### C.    Johnson States A Claim for a Willful Violation of the FCRA

On a motion to dismiss, Johnson's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556, 127 S.Ct. 1955 (internal quotation marks omitted).

Here, there can be no question that Johnson has pled willful conduct by Sherwin-Williams.  In Paragraph 54 of his Complaint, Johnson states:

> The foregoing violations were willful. Defendant acted in deliberate
> or reckless disregard of its obligations and the rights of Plaintiff and
> other class members under 15 U.S.C. § 1681b(b)(2)(A)(i).
> Defendant's willful conduct is reflected by, inter alia, the following:

a.  The FCRA was enacted in 1970; Defendant, which was founded
    in 1866, has had over 40 years to become compliant;

b.  Defendant's conduct is inconsistent with the FTC's longstanding
    regulatory guidance, judicial interpretation, and the plain
    language of the statute;

c.  Defendant is a publicly traded corporation with access to legal
    advice through its own general counsel's office and outside
    employment counsel, and there is no contemporaneous evidence
    that it determined that its conduct was lawful.

d.  Defendant knew or had reason to know from its communications
    with PreTrax that Defendant's conduct violated the FCRA;

e.  Defendant certified to PreTrax that it would comply with the
    disclosure requirements of the FCRA;

f.  Defendant repeatedly and routinely uses the disclosure it used
    with Plaintiff to procure consumer reports;

g.  Defendant's inclusion of a liability release clearly implies
    awareness by Defendant that it could be held liable for improperly
    procuring a consumer report;

h.  Despite the clear statutory text and there being a depth of
    guidance, Defendant systematically procured consumer reports
    without first disclosing in writing to the consumer in a document
    that consists solely of the disclosure, that a consumer report may
    be obtained for employment purposes; and

i.  By adopting such a policy, Defendant voluntarily ran a risk of
    violating the law substantially greater than the risk associated
    with a reading that was merely careless.

Despite Johnson's clear and unambiguous allegations of willfulness, Sherwin-Williams

nevertheless argues that its conduct was justifiable because its interpretation of the FCRA and

was not "objectively unreasonable." Specifically, Sherwin-Williams asserts that because it relied

on the "legitimate business need" section of the FCRA, then its interpretation is necessarily

reasonable.

14

Sherwin-Williams' argument is without merit. As noted above, Johnson's Complaint survives a motion to dismiss since it alleges sufficient factual allegations to demonstrate that Sherwin-Williams' position on its FCRA obligations was "objectively unreasonable." Indeed, Johnson specifically alleges that "[b]y adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless," which is the very standard cited by the Court in *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69 (2007).

Moreover, Sherwin-Williams' argument is premature. Whether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question. *Dennis v. Trans Union LLC*, No. 14-2865 (E.D. Pa. 2014) (attached as Exhibit 1); *Whitfield v. Radian Guar., Inc.*, 501 F.3d 262, 271 (3d Cir. 2007), vacated as moot, 128 S.Ct. 2901 (2008); *Manno v. Am. Gen. Fin. Co.*, 439 F.Supp.2d 418, 430 (E.D. Pa. 2006) (noting that whether an act was done with knowing or reckless disregard for another's rights is a fact-intensive question.). As succinctly stated by the Court in *Dennis v. Trans Union*:

> Plaintiff is not obligated at the motion to dismiss phase to prove that Defendant's omission of the third party entity as a "source" was based on a reading of the FCRA that was either knowingly erroneous or was objectively unreasonable and therefore reckless. Rather, at this phase Plaintiff need only allege facts that plausibly support her allegation that Defendant's decision to exclude that information could, under the FCRA's plain language, be an objectively unreasonable interpretation such that Defendant willfully violated Section 1681g(a)(2). As succinctly stated in *Korman*,[1] however, the Court need only determine whether Plaintiff's Complaint is sufficient, and not whether Plaintiff will succeed at the summary judgment phase or at trial."

Whether Sherwin-Williams' interpretation of the FCRA's provisions and the actions it

---

[1] 503 F.Supp.2d 755, 761 (E.D. Pa. 2007) ("Defendant's imploration of the Court to determine whether Defendant's interpretation was reasonable' is inappropriate here: at the motion to dismiss stage, the Court's only role is to determine whether the complaint is sufficient.").

took is inherently factual.  An actor's "objectively unreasonable actions with respect to a particular consumer's account can support a jury finding of willfulness. Blanket policies, too, can underpin such a finding." 744 F.3d 853, 868 (3d Cir. 2014). Johnson is entitled to discovery from Sherwin-Williams to determine what, if any, analysis was conducted relating to its FCRA obligations to employees or subcontractors and the policies, if any, Sherwin-Williams had relating to FCRA compliance.

Here, Johnson has alleged facts that plausibly support his allegation that Sherwin-Williams' decision to ignore longstanding case precedent and FTC guidance was objectively unreasonable.  Nevertheless, even if Johnson were required to show more at this stage (which he is not) there is sufficient evidence to demonstrate that well before Johnson's application to Sherwin-Williams, there were no less than two Circuit Court opinions that stated that a report can be obtained for employment purposes even by an entity which is not an employer or prospective employer.  Likewise, there were multiple FTC opinions issued in the late-1990s that stated that independent contractors must comply with the applicable provisions of the FCRA pertaining to consumer reports obtained for employment purposes.  Thus, giving Johnson the benefit of the doubt at this early stage, his Complaint undoubtedly alleges willful conduct.

Moreover, there can be no argument that Sherwin-Williams' decision to include a release in its Installer/Subcontractor Authorization and Release constitutes willful conduct.  At the time Johnson signed the document, there had been no less than four FTC opinions on the subject, as well as several court cases that specifically held that inclusion of a release constitutes a violation of the FCRA. *Singleton v. Domino's Pizza*, LLC, 2012 WL 245965, at *1 (D. Md. Jan. 25, 2012) (the inclusion of a liability release in the disclosure form violated the FCRA because the form included information beyond the FCRA disclosure itself); *Reardon v. Closetmaid Corp.*, 2013

16

WL 6231606, at *9 (W.D. Pa. Dec. 2, 2013); *Avila v. NOW Health Group, Inc.*, 2014 WL

3537825, at *2 (N.D. Ill. July 17, 2014) (denying defendant's motion to dismiss). As such, its

interpretation cannot be "objectively unreasonable."

Sherwin-Williams' citation to *Lamson v. EMS Energy Marketing Service, Inc.*, 868

F.Supp.2d 804 (E.D. Wisconsin) is unavailing. For starters, the *Lamson* court did <u>not</u> hold or

otherwise imply that the employer's interpretation of the FCRA was reasonable, and therefore

not willful.  Second, the *Lamson* court's decision was on summary judgment, well after the

parties took discovery on pertinent issues. Unlike *Lamson*, Johnson has not been permitted

discovery on Sherwin-Williams' conduct, analysis, or knowledge concerning its FCRA

obligations.  Thus, adjudication of this issue is only ripe after Johnson has been afforded this

opportunity.

In sum, Johnson's Complaint clearly and unambiguously sets forth allegations of willful

conduct by Sherwin-Williams. Its motion to dismiss must be summarily denied.

### D.    Johnson Did Not Release His Claim, for Any Such Release is Inapplicable as a Matter of Law and Public Policy

Sherwin-Williams' claims that the Authorization and Release, which purports to release

Sherwin-Williams from "any and all liability and responsibility, damages, and claims of any kind

whatsoever arising from any actions taken pursuant to this authorization," absolves it of liability.

Incredibly, Sherwin-Williams relies upon the very release that Johnson claims violated the

"stand-alone disclosure" requirements of the FCRA. See Complaint, ¶ 36-39.  Unfortunately for

Sherwin-Williams, such releases run counter to judicial and regulatory guidance.

For example, the FTC has specifically warned that "[t]he inclusion of such a waiver [of

liability] in a disclosure form will violate Section 604(b)(2)(A) of the FCRA [15 U.S.C. §§

1681b(b)(2)(A)], which requires that a disclosure consist 'solely' of the disclosure that a

17

consumer report may be obtained for employment purposes." In *Massey v. On-Site Manager,*

*Inc.*, Case 1:11-cv-02612, 2011 U.S. Dist. LEXIS 104823 (E.D. N.Y., Sept. 15, 2011), the court

denied a motion to dismiss the FCRA claim based on a similar prospective waiver of FCRA

rights in a rental contract, noting the important public policy underlying the FCRA:

> Moreover, enforcement of this release would undermine the intentions of
> Congress and New York's legislature in enacting the FCRA and the
> NYFCRA. The FCRA was enacted after Congress's express finding that
> "consumer reporting agencies have assumed a vital role in assembling and
> evaluating consumer credit and other information on consumers . . . [and]
> [t]here is a need to insure that consumer reporting agencies exercise their
> grave responsibilities with fairness, impartiality, and respect for the
> consumer's right to privacy." 15 U.S.C. § 1681(a). The consumer report
> that On-Site provided to Vantage compiled information on prior evictions;
> prior bankruptcies; criminal history; sex offenses; and annual income. This
> information is extremely private and potentially stigmatizing. Congress
> passed the FCRA with the express purpose of protecting consumers from
> consumer reporting agencies that fail to ensure that this kind of
> information is accurate and up-to-date. If consumer reporting agencies
> could simply require landlords to include this release in all rental
> applications, they would become effectively exempt from the statutes'
> provisions and the protections that the legislature sought to provide
> consumers would be completely undermined. *See Brooklyn Sav. Bank v.*
> *O'Neil*, 324 U.S. at 704-705.

Indeed, as discussed above, nearly every court opining on this subject has held that a

release contained in a consumer report authorization violated the FCRA. See *supra*; *Miller v.*

*Quest Diagnostics*, 2015 WL 545506, at *3 (W.D. Mo. Jan. 28, 2015) (denying motion to

dismiss FCRA claim given that the disclosure form contained a release and other extraneous

information); *Milbourne v. JRK Residential America, LLC*, 2015 WL 1120284, at *7-8 (E.D. Va.

Mar. 11, 2015) (denying the defendant's "motion for summary judgment on the theory that its

authorization form satisfies the letter and spirit of the FCRA'"); *Speer v. Whole Food Market*

*Group, Inc.*, 2015 WL 1456981, at *3 (M.D. Fla. Mar. 30, 2015); *Lengel v. HomeAdvisor, Inc.*,

2015 WL 2088933, at *8 (D. Kan. May 6, 2015) (denying motion to dismiss FCRA claim given

that the disclosure form contained a release and other extraneous information).  Thus, it is hard to fathom how the very release that subjects Sherwin-Williams to FCRA liability can somehow absolve it of that liability.  Sherwin-Williams' motion should be overruled.

### E.    Article III Standing

Plaintiff acknowledges that on April 27, 2015, the United States Supreme Court granted certiorari in *Spokeo, Inc. v. Robins*, S. Ct. Case No. 13-1339, to consider whether a plaintiff has Article III standing to pursue an FCRA claim under 15 U.S.C. § 1681n where a plaintiff has incurred no actual damage.  Sherwin-Williams correctly notes that there is a split in the Circuits on this issue, with the Sixth Circuit holding that Article III standing may exist under these circumstances.  *See Beaudry v. TeleCheck Services, Inc*. 579 F.3d 702, 707-08 (6th Cir. 2009).  However, until that determination is made, *Beaudry* is binding precedent on this Court, and the case should proceed accordingly.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss must be summarily denied.

<div style="margin-left:45%">

Respectfully submitted,

/s/ Bryce A. Lenox
Brian T. Giles (0072806)
Bryce A. Lenox (0069936)
GILES LENOX
1018 Delta Avenue, Suit 202
Cincinnati, Ohio 45208
(513) 520-9829
(513) 824-8160 (fax)
Bryce@GilesLenox.com

Attorney for Plaintiff Thomas W. Johnson

</div>

**LOCAL RULE 7.1(f) CERTIFICATION**

I hereby certify that this case has not yet been assigned a track, and certify that the above

Memorandum adheres to the 20-page limitation set forth in Local Rule 7.1 for all unassigned

cases.

/s/ Bryce A. Lenox
Bryce A. Lenox


**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2015, I electronically filed the foregoing with the Clerk of the

Court using the ECF system, which sent notification of such filing to the following:

Todd H. Lebowitz
Baker & Hostetler LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, Ohio 44114-3482

Attorney for Defendant


/s/ Bryce A. Lenox
Bryce A. Lenox

20