**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS W. JOHNSON,** | ) | **CASE NO.  1:15 CV 1064** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **THE SHERWIN-WILLIAMS CO.,** | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Court on Defendant's Motion to Dismiss.  (**Doc #: 4** ("Motion").) For the following reasons, the Motion is **GRANTED**.

**I.**[1]

On October 30, 2014, Plaintiff Thomas W. Johnson dba TWJ Professional Installations, Inc. applied to be a sub-contractor for Sherwin-Williams for the purpose of providing floor covering installation services to Sherwin-Williams' retail customers.  To that end, Plaintiff signed a "Sub-Contractor's Agreement" with Sherwin-Williams ("Agreement").  (Doc #: 4-2.) The Agreement expressly identified Plaintiff as an "Independent Contractor," and reflected Plaintiff's acknowledgment  "that each is an independent contractor and neither party nor any of its personnel is, nor shall be deemed to be, <u>for any purpose</u>, an employee, agent, representative or partner of the other party hereto." (Id. ¶ 12 (emphasis added).)  The Agreement noted that the

---

[1]The following facts are taken from the complaint and the exhibits.

Sub-Contractor was responsible for its "tax withholdings, deposits, deductions and remittances required to be made by law" (id.); satisfying "all labor union requirements in connection with" its performance of floor installation services (id. ¶ 14); and procuring and maintaining at its sole expense Worker's Compensation, employer's liability, commercial general liability, and automobile insurance (id. ¶ 8). Paragraph 11 of the Agreement addressed the subject of Background Information and Checks. Specifically,

> Sub-Contractor acknowledges and agrees that Sherwin-Williams has a legitimate interest in the safety and security of the premises on which Services may be performed, as well as in the reputation of Sherwin-Williams and the quality of Services rendered, and may therefore, in its sole discretion, complete criminal background checks and obtain motor vehicle reports on Sub-Contractor from time to time during the term of this Agreement or in being considered to provide the Services, including as circumstances or events may necessitate. Subject to the requirements or limitations of law, Sub-Contractor acknowledges and agrees that if Sherwin-Williams deems the response to such checks and/or reports to be unsatisfactory in its sole discretion, Sherwin-Williams may immediately terminate this Agreement and any outstanding Work Orders with Sub-Contractor. Sub-Contractor hereby authorizes all persons and agencies, including law enforcement agencies, to supply Sherwin-Williams and its directors, officers and agents any information concerning its criminal background and motor vehicle record. Sub-Contractor further authorizes Sherwin-Williams and its directors, officers and agents to obtain consumer report information about Sub-Contractor during the term of this Agreement or while being considered to provide the Services, and instruct any consumer reporting agency receiving a request for such information to furnish the consumer report.

((Doc #: 4-2 ¶ 11.) The Agreement required Plaintiff to conduct routine and periodic criminal background checks and motor vehicle reports <u>on its employees</u>, to provide those checks and reports to Sherwin-Williams at its request, and to take appropriate safety and precautionary measures including removing its employees from performing services on behalf of Sherwin-Williams' customers. (Id.)

Plaintiff also signed an Installer/Sub-Contractor Authorization and Release which parroted the language in the Agreement:

> I understand, acknowledge and agree that Sherwin-Williams has a legitimate business interest in the safety and security of the premises on which floor covering services may be performed, as well as in the reputation of Sherwin-Williams and the quality of services rendered; and therefore acknowledge and agree that criminal background checks may be completed, and motor vehicle reports may be obtained, about me from time to time during the effective period of my Sub-Contractor's Agreement with Sherwin-Williams, while I am providing, or am being considered to provide, floor covering installation services pursuant to that agreement.  I hereby authorize all persons, agencies, including law enforcement agencies to supply Sherwin-Williams and its directors, officers and agents any information concerning my criminal background and motor vehicle record pursuant to this Authorization and Release.  In addition, I authorize Sherwin-Williams and its directors, officers and agents to obtain consumer report information about me during this same period, and instruct any consumer reporting agency receiving a request for such information to furnish my consumer report.  I understand that, upon written request by me within a reasonable period of time, I shall receive a complete and accurate disclosure of the nature and scope of the reviews performed pursuant to this authorization.  To the extent permitted by applicable law, I release Sherwin-Williams and its shareholders, affiliates, directors, officers, employees and agents from any and all liability and responsibility, damages and claims of any kind whatsoever arising from any actions taken pursuant to this authorization.

(Doc #: 1-1 ("Authorization and Release").)

Thereafter, Sherwin-Williams asked its outside consumer-reporting agency, PreTrax, Inc. to provide it with a background report on Plaintiff.  (Comp. ¶ 25.)  On February 10, 2015, PreTrax submitted that report to Sherwin-Williams.  (Id. ¶ 26.)  On February 16, 2015, Sherwin-Williams sent Plaintiff a "Notice of Adverse Action Based On Background Investigation," stating that Plaintiff's criminal history disqualified him from being a Sherwin-Williams Subcontractor/Installer ("Notice").  (Id. ¶ 27; Doc #: 1-2.)  Attached to the Notice was a copy of PreTrax's background report as well as a summary of rights under the Federal Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA").  (Doc #: 1-2 at 2-8.)  The background report showed

that Plaintiff was convicted of numerous felony burglaries for which he received a prison sentence of 5 years and 6 months. (Id. at 2-4.)

Plaintiff thereafter filed this case against Sherwin-Williams alleging that it violated 15 U.S.C. § 1681b(b)(2)(A)(I) by procuring a consumer report on him for employment purposes without first providing him the clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes (i.e., the "stand-alone disclosure"), and violated § 1681b(b)(3)(A) by using a consumer report to make an "adverse" employment decision before providing him a copy of the report and a summary of rights under FCRA (i.e., the "pre-adverse action" requirement). He also purports to bring this case on behalf of all persons who applied for employment with Sherwin-Williams in the last two years and who did not receive the stand-alone disclosure or the pre-adverse action procedures.

On June 22, 2015, Sherwin-Williams filed the pending Motion to Dismiss making the following arguments. First, the "stand-alone disclosure" and "pre-adverse action" sections of FCRA apply only to reports obtained "for employment purposes;" they do not apply to reports obtained under the "legitimate business need" section of the Act, which is the situation here. Second, even if the stand-alone disclosure and pre-adverse action provisions of FCRA did apply, Plaintiff's claim would still fail because he does not allege that he suffered any actual harm from the alleged violations. And third, even if Plaintiff could show damages, his claims would still be dismissed because he released Sherwin-Williams from any liability for conducting the background check. In sum, on the face of the complaint and the exhibits, Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff filed an opposition brief arguing that employers like Sherwin-Williams are subject to the "stand-alone disclosure" and "pre-adverse action" provisions of FCRA irrespective of whether the relationship is that of an employee or independent contractor. (Doc #: 5.) Even if the "stand-alone disclosure" and "pre-adverse action" FCRA provisions do not apply, the Court must engage in a factual inquiry of whether or not Johnson was an employee rather than an independent contractor. Furthermore, Plaintiff did not release Sherwin-Williams from liability for any conduct relating to the background check because the release is void against public policy. And finally, Sherwin-Williams' "legitimate business need" argument is simply a smokescreen for the true reason Sherwin-Williams procures background checks on its prospective installers: to ensure based upon the background report that they do not work on Sherwin-Williams' projects.

The Court has reviewed the Motion, the Opposition brief, the Reply brief (Doc #: 6) and the record, and is prepared to issue its ruling.

**II.**

The Fair Credit Reporting Act ("FCRA") is a broad statute that covers various aspects of consumer reports. Under FCRA, a background check performed by an outside vendor is a "consumer report," and the individual to whom the background check pertains is the "consumer." 15 U.S.C. §§ 1681a(c), (d). Consumer reports may be obtained for many different purposes, most of which do <u>not</u> require notice to the consumer that a consumer report is being obtained. See generally, 15 U.S.C. §§ 1681b(a)(3)(A) - (G). Among the numerous purposes for which no notice is required is when there is a "legitimate business need for the information in connection with a business transaction that is initiated by the consumer." 15 U.S.C. §

1681b(a)(3)(F)(I). A consumer report may also be obtained for no particular reason at all if it is consistent with the "written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a)(2).

However, when a consumer report is obtained <u>for employment purposes</u>, additional rules apply – all of which are found at 15 U.S.C. § 1681b(b). Under § 1681b(b)(2)(A), a person may not procure a consumer report for employment purposes unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured . . . in a document that consists solely of the disclosure and the consumer has authorized in writing . . . the procurement of the report by that person." This is the "stand-alone disclosure" requirement that forms the basis for Count One.

Under § 1861b(b)(3), "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the consumer . . ." Id. This is the "pre-adverse action" requirement that forms the basis for Counts Two and Three. Like the "stand-alone disclosure" requirement, the "pre-adverse action" requirement applies only when a consumer report is sought for employment purposes.

The definitional section of FCRA, 15 U.S.C. § 1681a, makes clear that "the term 'employment purposes' when used in connection with a consumer report means a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h).

In bringing this case and challenging Sherwin-Williams' Motion to Dismiss, Plaintiff basically asks the Court to completely ignore the unambiguous language of the two documents he signed in October 2014. This, the Court cannot do. Instead, the Court finds, based on the unambiguous language in the Agreement and the Authorization and Release, that neither the stand-alone disclosure nor the pre-adverse action requirements of FCRA apply to Plaintiff for the following reasons. One, Plaintiff is a self-employed business owner who was applying for approval as a sub-contractor.

Two, the plain text of the Authorization and Release form Plaintiff signed was provided in connection with the application of his company, TWJ Professional Installations, Inc., to become an approved "Installer/Sub-Contractor" for Sherwin-Williams. (Doc #: 1-1).

Three, in signing the Authorization and Release, Plaintiff expressly understood, acknowledged and agreed that Sherwin-Williams had a "legitimate business interest in the safety and security of the premises on which floor covering services may be performed." (Id.) This understanding was parroted in the Sub-Contractor's Agreement that he signed the same day. (See Doc #: 4-2 ¶ 11.)

Four, Plaintiff specifically authorized all persons and agencies (including law enforcement, motor vehicle, and consumer reporting agencies) to supply Sherwin-Williams any information concerning his criminal background and motor vehicle record at any time. (Id.)

Five, in signing the Sub-Contractor's Agreement, Plaintiff expressly acknowledged that he was an independent contractor who shall not be deemed "for any purpose" an employee, agent or representative of Sherwin-Williams; who may not use Sherwin-Williams' name, logo or marks for any reason unless he signs a licensing agreement; who was solely responsible for all

tax withholdings; and who was required to provide, for his company and any subcontractor that he engaged, workers compensation, employer liability, general commercial liability and automobile insurance.  (Doc #: 4-2 ¶¶ 11, 8.)

There is but one conclusion that can be drawn from the two unambiguous documents Plaintiff signed.  Plaintiff was not applying for a job with Sherwin-Williams; he was applying to be an approved subcontractor for installing floor coverings to Sherwin-Williams' retail customers.  Plaintiff himself acknowledged that Sherwin-Williams' procurement of background information was based on a legitimate business need, i.e., the safety and security of the premises on which floor covering services may be rendered.  Contrary to Plaintiff's assertions, this was no smokescreen.

This reading of the undisputed, unambiguous evidence is supported by case law on point.  In *Lamson v. EMS Energy Marketing Service, Inc.*, 868 F.Supp.2d 804 (E.D. Wis. 2012), EMS hired Lamson as an independent contractor but terminated the relationship after one month.  The document Lamson signed was entitled "Independent Contractor Agreement" and it reflected his understanding and agreement that he was "an independent contractor and not . . . an employee" of EMS.  *Id*. at 806.  Prior to his termination, EMS procured a background check on Lamson without providing him prior notice.  As here, Lamson filed suit against EMS based on the stand-alone and pre-adverse action sections of FCRA.  The district court held that "the unambiguous language" of FCRA makes clear that the "for employment purposes' sections of FCRA do not apply where an individual is being evaluated for retention as an independent contractor."  *Id*. at 816.

Plaintiff argues that employers like Sherwin-Williams are subject to the stand-alone disclosure and pre-adverse action provisions of FCRA regardless of whether the relationship is that of an employee or independent contractor. The cases he cites in support of this position are distinguishable for reasons adequately articulated by Sherwin-Williams at pages 2-5 of its Reply brief.

Plaintiff also cites two informal opinion letters written by FTC staff members in 1998 suggesting that § 1681b(b) could apply to independent contractors. There are several problems with this argument. First, courts have held that these informal staff letters carry no weight. *See Lamson*, 868 F.Supp.2d at 817; *Johnson v. Federal Express Corp*., 147 F.Supp.2d 1268, 1272 (M.D. Ala. 2001). Second, the FTC no longer oversees FCRA and stopped publishing such opinion letters in 2001. (See Doc #: 6 at 6 n.5.) Third, the second letter relied upon the first letter for its conclusion. Fourth, the second letter expressly stated that it was an informal staff opinion that was not binding on the FTC. *See Lamson*, 868 F.Supp.2d at

Plaintiff argues that it is against public policy to release Sherwin-Williams of liability for violating the "employment purposes" section of FCRA. Because the Court concludes that the "employment purposes" section of FCRA does not apply to the relationship between Plaintiff and Sherwin-Williams, this argument also fails.

And finally, the undisputed evidence shows that Plaintiff expressly authorized all persons and agencies, including consumer reporting agencies, to supply Sherwin-Williams any information concerning his criminal background in recognition of Sherwin-Williams' legitimate business interest in the safety and security of the premises on which services would be provided by approved subcontractors. As previously noted, a consumer report may be obtained for no

particular reason at all if it is consistent with the "written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a)(2).

In reaching its conclusion, the Court notes that Plaintiff does not challenge the accuracy of the criminal information provided by PreTrax, and he cannot <u>seriously</u> challenge the legitimacy of Sherwin-Williams' interest in preventing convicted burglars from performing subcontracting work in its retail customer's premises under its auspices.

### III.

For all these reasons, Defendant's Motion to Dismiss (**Doc #: 4**) is hereby **GRANTED**.

**IT IS SO ORDERED.**

    <u>/s/ Dan A. Polster    August 10, 2015</u>
**Dan Aaron Polster**
**United States District Judge**